HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>ELMER BUCKARDT,<br><br>                Defendant. | Case No. 2:19-cv-00052-RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. # 38), which Defendants oppose (Dkt. # 40). Plaintiff, the United States of America ("the Government"), alternatively seeks default judgment (Dkt. # 38 at 26) following the Clerk's Entry of Default (Dkt # 35). Having reviewed the parties' briefs and the record, the Court **GRANTS** Plaintiff's motion for summary judgment.

## II. BACKGROUND

Defendant Elmer Buckardt ("Mr. Buckardt") was employed by Northwest Airlines ("NWA") first as a flight engineer and then as a pilot for approximately 32 years until his retirement in October 2001. Dkt. #38-4 at 9-10, 12. His salary in 2000 was approximately $200,000. *Id*. at 12. Upon his retirement, Mr. Buckardt began receiving pension plan payments in the form of a lump sum of $361.537.79 from his NWA non-

ORDER – 1

qualified excess pension plan and monthly payments of $8, 246.71 from his NWA qualified pension plan thereafter. Dkt. # 38 at 4. Mr. Buckardt received a W-2 for the lump sum pension plan payment for tax year 2001 and 1099-r statements for the tax years 2001-2018. *Id*.

In January 1997, Mr. Buckardt created the D'Skell Agape Society ("D'Skell"), a purported "religious society," which he incorporated as a "corporation sole." Dkt. # 38 at 11. Mr. Buckardt created D'Skell's "Instrument of Acknowledgement" with the assistance of an individual named Jim Shaver, who created such entities for a living. Dkt. # 38-5 at 15-17, 19. Mr. Buckardt stated that he and his wife, Karen Buckardt ("Mrs. Buckardt") created D'Skell as a way to transfer property to family, similar to a trust. *Id*. at 19. Mr. Buckardt is the "overseer" and Mrs. Buckardt is the "scribe" of D'Skell. *Id.* at 23. No one else has been associated with D'Skell since its creation. *Id*. The D'Skell mailing address is the Buckardt's P.O. Box. Dkt. #38-5 at 105.

On November 8, 2000, Mr. and Mrs. Buckardt, who have been married since 1985, Dkt. # 1 at 3, purchased two adjacent parcels of real property: (1) 5933 284th Street NW ("5933 Property") and (2) 6005 284th Street NW ("6005 Property"), (collectively, the "Subject Properties") in Stanwood, Washington. *Id*. at 3-4. They obtained a mortgage for $237,5000 for the purchase of the Subject Properties. Dkt. # 38-6 at 24. Mr. Buckardt paid all mortgage payments. *Id.* In 2001, the Buckardts moved into the residence at the 5933 Property. They currently reside there. Dkt. # 1 at 3.

On April 30, 2001, Mr. and Mrs. Buckardt transferred both properties to D'Skell by quit claim deed as "gifts" (Dkt. # 38-4 at 102) for no consideration (Dkt. # 1 at 4-5). On May 2, 2001, the quit claim deed was recorded with Snohomish County. Dkt. # 38-6 at 24. Mr. Buckardt continued to make payments on the mortgage after the transfer. Dkt. # 38-5. Mr. Buckardt confirmed that D'Skell has no other function beside holding the deed to the property. *Id.* at 20.

Beginning in 1998, Mr. Buckardt started researching tax law by reading the tax

ORDER – 2

1 code and written material about the interpretation of the code. *Id.* at 22-26. Based on his
2 research, Mr. Buckardt concluded that the tax code is "vague and ambiguous," it "is a
3 deception to the American people," and it "doesn't tell the truth." Dkt. # 38-4 at 26-27.
4 He opined that the "Federal Reserve and the IRS are not part of the federal government"
5 and that the "IRS is nothing more than a collection agency for the IRS from whom the
6 United States government borrows money, and they like to have their money back." *Id.*
7 at 27. Mr. Buckardt adopted the position that "the only federal tax liability that's legal is
8 for government employees, and I'm not a government employee and never have been and
9 never will be." *Id.* at 21. He changed his tax filing status from married filing joint to
10 married filing separate around this time. *Id.* at 41-42. According to Mr. Buckardt, this
11 change was intended to "remove" his wife "from what [he] was doing," that is,
12 challenging his tax liability in Tax Court. *Id*. at 42.

13 Based on these views, Mr. Buckardt has either failed to file valid tax returns or
14 failed to file timely tax returns since 2000. *Id*. at 5. In 2002, Mr. Buckardt filed a
15 petition in Tax Court contesting the Internal Revenue Service's ("IRS") notice of
16 deficiency for income tax year 2002. Dkt. # 18-2, Ex. 16. The Tax Court subsequently
17 found Mr. Buckardt liable for a deficiency in federal income taxes and penalties and
18 cautioned him against advancing frivolous and groundless arguments. Dkt. # 18-2, Ex.
19 21. Nevertheless, Mr. Buckardt continued to challenge his federal income tax liability,
20 reporting zero income in subsequent filings and contesting the IRS's Notice of
21 Deficiency in Tax Court repeatedly. *See* Dkt. # 38 at 7-9.

22 In 2004, the Tax Court found a deficiency for 2002 in the amount of $113,461.07,
23 as well as additions to tax under Section 6651(a)(1) in the amount of $25,528.74 and
24 under Section 6654(a) in the amount of $3,791.53. Dkt. # 38-1 at 155 (*Buckardt v. CIR*,
25 Order of Dismissal and Decision, Tax Court Case No. 16074-04). In 2010, the Tax Court
26 found that Mr. Buckardt owed taxes for the years 2003, 2004, and 2005, in the amounts
27 of $42,862, $20,551, and $20,283, respectively. *Id*. at 176 (*Buckardt v. CIR*, Order and
28 ORDER – 3

Decision, Tax Court Case No. 27949-07). The Tax Court also found that additions to tax were due under Section 6651(a)(1) for the same years in the amounts of $9,643.95, $4,623 .98, and $4,563.68, and under Section 6654(a) for the years 2004 and 2005 in the amounts of $596.55 and $813.58, respectively. *Id*. This order was affirmed by the Ninth Circuit. *See Hawkins v. United States*, 30 F.3d 1077, 1079 (9th Cir. 1994).

In 2011, the Tax Court again found Mr. Buckardt liable for a $19,299 deficiency and a $3,860 addition to tax under Section 66629(a) for 2008, as well as a penalty of $25,000 pursuant to Section 6673. *Id*. at 195 (*Buckardt v. CIR*, Order and Decision, Tax Court Case No. 22131-10). The Tax Court Judge imposed this penalty in response to Mr. Buckardt's failure to adhere to the court's prior holdings regarding his tax liability and repeated assertions of "nothing but frivolous and groundless arguments." Dkt. # 38-1 at 192. The Judge pointed to Mr. Buckardt's litigious record noting that "[i]t is apparent . . . that Mr. Buckardt instituted or maintained this proceeding primarily, if not exclusively, as a protest against the federal income tax system, and his proceeding in this Court is merely a continuation of [his] refusal to acknowledge and satisfy his tax obligations." *Id*. at 193.

The IRS made assessments for income tax years 2007, 2010, and 2011 after computing Mr. Buckardt's liability under Section 6020(b) based on his failure to file a tax return. Dkt. # 38 at 8-9. The IRS sent notices of deficiency for both assessments and Mr. Buckardt confirmed he received them. *Id*. The assessments for each tax year are summarized below:

| TYPE OF TAX | TAX PERIOD | BALANCE AS OF 01/24/2020 |
|---|---|---|
| 1040 (Income) | 12/31/2002 | $311,979.01 |
| 1040 (Income) | 12/31/2003 | $113,627.77 |
| 1040 (Income) | 12/31/2004 | $56,143.86 |
| 1040 (Income) | 12/31/2005 | $52,657.07 |
| 1040 (Income) | 12/31/2007 | $10,925.41 |
| 1040 (Income) | 12/31/2008 | $35,831.44 |

ORDER – 4

| | | |
|---|---|---|
| 1040 (Income) | 12/31/2010 | $31,793.49 |
| 1040 (Income) | 12/31/2011 | $48,468.68 |
| 6702 (Civil Penalty) | 12/31/2000 | $8,722.94 |
| 6702 (Civil Penalty) | 12/31/2001 | $7,818.38 |
| 6702 (Civil Penalty) | 12/31/2002 | $7,754.43 |
| 6702 (Civil Penalty) | 12/31/2006 | $6,809.35 |
| 6702 (Civil Penalty) | 12/31/2007 | $6,809.35 |
| 6702 & 6673 (Civil Penalty) | 12/31/2008 | $40,455.61 |
| | | **TOTAL**: $ **739,796.79** |

Most recently, on October 10, 2017, Mr. Buckardt filed another petition in Tax Court alleging that he never received notices of deficiency or notices of determination for tax years 2000-2015.  Dkt. # 18-1, Ex. C.  In response, the IRS moved to dismiss Mr. Buckardt's petition for lack of jurisdiction.  Dkt. # 12-1 at 6.  The Tax Court granted the motion to dismiss, noting that the IRS had not issued a notice of deficiency or notice of determination for tax years 2000-2015 "that would permit [Mr. Buckardt] to invoke the Court's jurisdiction."  Dkt. # 12-1 at 2.  This decision was based on the untimeliness of Mr. Buckardt's petition, which was well past of the 90-day window after the notice of deficiency is mailed in which Tax Court has jurisdiction to review a notice of deficiency, and the 30-day window after a notice of determination is issued within which Tax Court has jurisdiction to review of notice of determination.  Dkt. # 23 at 5.

On January 11, 2019, the Government filed the Complaint in this Court against Mr. and Mrs. Buckardt, D'Skell, and Snohomish County,[1] Dkt. # 1, to recover Mr. Buckardt's unpaid tax liabilities over several years beginning in 2002, as well as civil penalties under 26 U.S.C. §§ 6702 and 6673, through the foreclosure of their home and

---

[1] The Government named Snohomish County as a party to this action pursuant to 26 U.S.C. § 7403 because it may claim some right, title, or interest in disputed properties. Dkt. # 7, at 2. The two parties stipulated that the Government claims no monetary relief against Snohomish County, and Snohomish County has no interest in the case apart from ensuring that the foreclosure sale of the properties pursuant to the Government's claim be made subject to Snohomish County's ad valorem property tax liens.  *Id*. at 2, 5.  The Court granted the stipulation, confirming that, apart from this stipulation on foreclosure, Snohomish County need not participate in the adjudication of this matter.  *Id*. at 6, Dkt. # 11.

ORDER – 5

adjacent property, the Subject Properties. Dkt. # 38 at 3. The Government asked the Court to (1) reduce the outstanding tax assessments against Mr. Buckardt to judgments; (2) set aside transfers of two of the Buckardt's properties to D'Skell, (3) foreclose federal tax liens on the properties, and (4) sell the properties. Dkt. # 1. Mr. and Mrs. Buckardt[2] and D'Skell,[3] (collectively, the "Defendants") moved to dismiss this action for lack of jurisdiction. Dkt. # 12.

On October 31, 2019, the Court denied Defendants' motion to dismiss for lack of jurisdiction, indicating that the Court has jurisdiction under 28 U.S.C. § 1331. Dkt. # 23. Two days later, Defendants filed a second one-page motion to dismiss, again alleging lack of jurisdiction. Dkt. # 24. On November 12, 2019, this Court struck Defendants' second motion to dismiss as frivolous, noting again that "the jurisdictional basis for this action is federal question jurisdiction under 28 U.S.C. § 1331." Dkt. # 28. The Court also warned Defendants that if they continued to file frivolous motions, the Court would not hesitate to impose appropriate sanctions. *Id.* That same day, Defendants filed a "motion for notice of hearing on motion to compel discovery be dismissed" in which they again asserted that the Court lacks jurisdiction. Dkt. # 29 at 1. On November 29, 2019, the Court struck Defendants' motion to dismiss notice of hearing. Dkt. # 32.

On January 8, 2020, the Government filed a motion for default against Defendants based on their failure to file a responsive pleading to the Complaint within 14 days after the Court's order denying Defendants' motion to dismiss, which was November 14, 2019. Dkt. # 34 at 2. The Government had emailed Defendants on November 21, 2019 advising them of its intention to move for entry of default if they did not file a response. *Id*. They failed to respond, and the Government subsequently filed its default motion.

---

[2] The Court refers to "Mr. Buckardt" and "Mr. and Mrs. Buckardt" interchangeably when discussing debt owed or property owned because they share debts and property acquired throughout their marriage according to Washington community property laws. *See* RCW 26.16.030; RCW 26.16.040.

[3] Mr. and Mrs. Buckardt proceed here pro se, and Mr. Buckardt appears to represent D'Skell as its "Overseer," by signing his name above the "D'Skell Agape Society" in all filings.

ORDER – 6

On January 10, 2020, the Clerk of the Court entered an Order of Default. Dkt. # 35.

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

### IV.  DISCUSSION

The facts here are undisputed. Mr. Buckardt does not refute the claim that he has not paid federal income tax consistently since 2000, but instead argues that, as a matter of law, he is not required to do so. Dkt. # 38-4 at 20-21. The Government claims that it is entitled to judgment against Mr. Buckardt for his income tax and civil penalties liabilities and to foreclosure on its federal tax liens on the Subject Properties. Dkt. # 38 at 14, 20. The Court agrees. In the absence of a genuine issue of material fact the Court may rule as a matter of law.

**A.    Mr. Buckardt is liable for federal income taxes and civil penalties.**

In an action to collect taxes, the government bears the burden of proof. *United*

ORDER – 7

*States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983).  The government can carry the burden "merely by introducing its assessment of tax due." *Id*.  A presumption of correctness attaches to the assessment if it is supported by "a minimal evidentiary foundation." *Id*.  This is established when "some substantive evidence is introduced demonstrating that the taxpayer received unreported income." *Id*.  The burden then shifts to the taxpayer to rebut the presumption by a preponderance of evidence.  *Rapp v. Comm'r*, 774 F.2d 932, 935 (9th Cir. 1985).  If the taxpayer overcomes the presumption with "competent and relevant evidence," the burden of proving deficiency reverts to government.  *Keogh v. Comm'r*, 713 F.2d 496, 501 (9th Cir. 1983).  The government's determination of additions to tax are presumptively correct and "must stand unless the taxpayer can establish that he was not negligent." *Hall v. Comm'r*, 729 F.2d 632, 635 (9th Cir. 1984).

The Government has met its burden here.  First, by submitting Forms 4340 showing the dates and assessment amounts for Mr. Buckardt's federal income taxes for 2002-2005, 2007-2008, and 2010-2011, the Government provided presumptive proof that the taxes were validly assessed.  The Ninth Circuit has recognized IRS Form 4340 "provides at least presumptive evidence that a tax has been validly assessed." *Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993).  Second, Mr. Buckardt admits that he receives annual pension payments from NWA, interest income from Mutual Trust Life Insurance Company ("MTL"), and Social Security payments.  *See* Dkt. # 38-4 at 84-85, 93-94, 98; Dkt. # 38-5 at 63, 100, 111-12.  Furthermore, the Tax Court's Orders found Mr. Buckardt liable for a federal income tax deficiency and additions to tax penalties for several years beginning in 2000 as discussed in detail above.

In his response to the Government's motion, Mr. Buckardt does not present any evidence to rebut the presumption nor does he argue that his retirement income—which he acknowledges receiving—falls within an exception to filing requirements.  Instead, Mr. Buckardt asserts his belief that he is not required to pay any federal income tax.  Dkt.

ORDER – 8

# 41-1 at 4. He proceeds to advance erroneous arguments, and his position is untenable. He responds to the Government's motion with the following arguments: (1) the Court lacks jurisdiction over the matter (Dkt. # 41-1 at 3-4); (2) he is not liable for federal income tax (*id*. at 4); (3) the federal tax liens imposed on him were improperly executed and thus fraudulent (*id*. at 5); and (4) the transfer of the Subject Properties to D'Skell was not fraudulent (*id*. at 6).

In his argument asserting lack of jurisdiction, Mr. Buckardt once again blatantly disregards this Court's order indicating that it does in fact have jurisdiction pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402 and 7403, Dkt. # 23, as well as its two subsequent orders striking Defendants' debunked jurisdictional arguments, Dkt ## 28, 32. The Court has rejected Mr. Buckardt's jurisdictional arguments multiple times and will not revisit them here.

With respect to his argument regarding his tax liability, Mr. Buckardt fails to demonstrate that the pension income he has been receiving every year since 2001 is not subject to taxation under the Tax Code. 26 U.S.C.§ 1 of the Internal Revenue Code imposes tax on taxable income. Section 63 defines "taxable income" as "gross income" minus allowable deductions. 26 U.S.C. § 63. "Gross income" is defined in Section 61 as "all income from whatever source derived, including…pensions." 26 U.S.C. § 61(a)(10). In 26 U.S.C. § 6012, Congress clearly identified who is required to file income tax returns as "every individual having for the taxable year gross income which equals or exceeds the exemption amount" barring several exceptions. Mr. Buckardt has not demonstrated that pension income, specifically defined as taxable income, fits into one of the tax code's specific exceptions.

Mr. Buckardt appears to espouse several erroneous beliefs about the tax code and its application. First, his conclusion that "the terms in the tax code are vague and ambiguous" because the Government objected to his interrogatory as "vague and ambiguous" is a non sequitur that in no way renders the tax code invalid or inapplicable

ORDER – 9

to Mr. Buckardt. Dkt. # 41-1 at 4. Second, his apparent allegation that the IRS violated the tax code because it did not obtain his consent to calculate his return pursuant to 26 U.S.C. § 6020(a) is mistaken. *Id*. at 5. Mr. Buckardt is correct that pursuant to this section, a return may be prepared with information that a person has consented to disclose. *See* 26 U.S.C. § 6020(a). However, if a person fails to make a return or makes a false, fraudulent, or frivolous return—as in Mr. Buckardt's case—an Internal Revenue Officer can make a return using information that can be obtained without the consent of the individual pursuant to 26 U.S.C. § 6020(b).

Third, Mr. Buckardt's assertion that a statutory notice of deficiency or determination that has not been issued or signed by the Secretary is invalid is unfounded. *Id*. at 6. A notice of deficiency may be signed by the Secretary *or a delegate*. *See* 26 U.S.C. § 6212(a); 26 U.S.C. § 7701(a)(11)(A) ("Secretary" is defined as "the Secretary of the Treasury or his delegate."). The Secretary is not required to personally or directly issue of a notice of determination. *See* 26 U.S.C. § 6330. Finally, Mr. Buckardt's argument that he is not liable for federal income tax because he is not subject to 26 U.S.C. § 7608 Subtitle E (Dkt. # 41-1 at 6) represents a misunderstanding of—or, perhaps, disregard for—the applicable statutes discussed above. *See* 26 U.S.C. §§ 61(a)(10), 6012.

Beyond these erroneous views, Mr. Buckardt has failed to proffer any meritorious argument supporting his position that he is not liable for federal income tax on his yearly pension income. As a matter of law, the Court holds that Mr. and Mrs. Buckardt and D'Skell are liable for federal income tax.

**B.       The Government properly executed its federal tax liens.**

For a person who neglects or chooses not to pay their taxes after demand, the government may impose "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person" for the amount of the tax liability as well as interest, additional amount, addition to tax, or penalty, and other

ORDER – 10

accrued costs.  26 U.S.C. § 6321.  Such liens arise at the time the assessment is made and continue until the liability is satisfied.  26 U.S.C. § 6322.  A civil action may be filed in district court "to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability."  26 U.S.C. § 7403(a).  The court may adjudicate all matters involved, finally determine the merits of all claims and liens upon property, decree a sale of such property and a distribution of the proceeds according to its findings.  26 U.S.C. § 7403(b).

The Internal Revenue Code states that "[t]he filing of a notice of lien shall be governed solely by this title and shall not be subject to any other Federal law establishing a place or places for the filing of liens or encumbrances under a national filing system."  26 U.S.C. § 6323.  The Ninth Circuit has held that "[n]otice of a federal tax lien need not be filed in accordance with the laws of the state where the property is located, except those pertaining to the place of filing." *United States v. Winterburn*, 749 F.2d 1283, 1286 (9th Cir. 1984).  In Washington, property acquired after marriage is community property.  *See* RCW 26.16.030.  Community real estate may be subject to liens of judgments recovered for community debts.  RCW 26.16.040.

The Government here has established that Mr. Buckardt is indebted to the Government as a result of the properly assessed income taxes, penalties, and interest.  Federal tax liens arose and attached to all property and rights to property belonging to Mr. Buckardt on the dates of assessment.  The Government filed the lien in Snohomish County where Subject Properties are located.  The imposition of liens on the community property of Mr. and Mrs. Buckardt, based on federal law governing tax liens and state law governing community property is proper.  Mr. Buckardt asserts that the notice of lien he received is "fraudulent" because it does not adhere to Section 9 of Uniform Commercial Code ("UCC").  Dkt. # 41-1 at 7.  Federal law governing notice of federal tax liens, however, is not controlled by the UCC.  *See* 26 U.S.C. § 6323; 749 F.2d at 1286.

ORDER – 11

Mr. Buckardt's argument is meritless.

### C. The Government is entitled to foreclosure of its federal tax liens on the Subject Properties.

Tax liens attach to "all property and rights to property" belonging to a person who fails to pay taxes, 26 U.S.C. § 6321, and a nominee or alter-ego of such person. *See G. M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977); *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013). "A nominee is one who holds bare legal title to property for the benefit of another." 720 F.3d at 1066. In determining whether an entity is a nominee in the tax lien context, courts must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach." *Drye v. United States*, 528 U.S. 49, 58 (1999).

Washington state law recognizes the nominee or alter-ego doctrine where one individual "so dominates and controls a corporation that such corporation is [the individual's] alter ego, a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same." *Rapid Settlements, Ltd.'s Application for Approval of Transfer of Structured Settlement Payment Rights v. Symetra Life Ins. Co.*, 271 P.3d 925, 930 (Wash. Ct. App. 2012) (internal citation and quotation marks omitted).

Here, it is clear that Mr. Buckardt, as creator and overseer of D'Skell, and Mrs. Buckardt, as the "Scribe," have complete control over the entity and the Subject Properties to which it holds title. Dkt. 38-5 at 22. Mr. and Mrs. Buckardt are the only individuals involved with D'Skell, and they make all decisions for D'Skell. Dkt. # 38-5 at 24. The only decisions that have been made with respect to D'Skell have been to create it and to transfer the Subject Properties to it. *Id.* at 25.

The Buckardts live in a house on one of the Subject Properties of land and do not pay rent to D'Skell. *Id*. at 49-50. They maintain and improve the Subject Properties—and pay all associated costs—and permit their children and others to live there without

ORDER – 12

paying rent to D'Skell. Dkt. # 38-4 at 41. Mr. Buckardt pays for all bills related to the Subject Properties either through his own bank account or D'Skell's bank account, which he alone funds. Dkt. # 38-5 at 31-32. D'Skell has no money or income, and its only purpose, as noted above, is to hold title to the Subject Properties. *Id*. at 12.

Moreover, Mr. Buckardt transferred the Subject Properties—for no consideration—on April 30, 2001, the same year he retired and began challenging his federal tax liability. Dkt. # 38-6 at 26-27. This was also around the time that Mr. Buckardt changed his filing status from married filing joint to married filing separate, in attempt to insulate his wife from the consequences of his failure to properly file taxes and challenge his tax liability. Dkt. # 38-4 at 41-42

Finally, a closer look at Mr. and Mrs. Buckardt's decision to form D'Skell as a "corporation sole" under a now-expired state statute intended for bona-fide churches and religious institutions further supports Mr. Buckardt's use of D'Skell as an alter-ego. *See* RCW 24.12.010 ("Any person, being the bishop, overseer, or presiding elder of any church or religious denomination in this state, may, in conformity with the constitution, canons, rules, regulations, or discipline of such church or denomination, become a corporation sole."); RCW 24.12.005 ("Effective August 1, 2009, a corporation sole may not be formed or incorporated under this chapter."). Indeed, a review of case law involving these entities illuminates their popularity as fraudulent tax-avoidance schemes. *See United States v. Gardner*, No. CV05-3073-PCT-EHC, 2008 WL 906696, at *6 (D. Ariz. Mar. 21, 2008), *aff'd*, 457 F. App'x 611 (9th Cir. 2011) (enjoining defendants from "[o]rganizing, promoting, marketing, or selling corporations sole or any tax shelter . . . that advises, assists, or encourages taxpayers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities."); *United States v. Johnson*, No. 3:05-CV-05798-RBL, 2007 WL 634019, at *5 (W.D. Wash. Feb. 23, 2007) (enjoining defendant from "[i]nstructing, assisting, or advising others to violate the tax laws, including to evade the payment of taxes through

ORDER – 13

participation in a corporation sole."); *United States v. Kennedy*, No. 3:06CV5383 JSW, 2007 WL 404915, at *1, *3 (N.D. Cal. Feb. 2, 2007) (enjoining defendant from making the false statement that a corporation sole can reduce or eliminate one's federal income tax liabilities, and from promoting the corporation sole program that assists taxpayers in tax evasion.); *United States v. Stoll*, No. CIV. C05-0262RSM, 2005 WL 1763617, at *1 (W.D. Wash. June 27, 2005) (finding that defendants organized, promoted, and marketed "a fraudulent tax scheme using corporations sole . . . in an attempt to fraudulently evade income and employment tax, and to thwart the IRS's ability to assess and collect . . . unpaid federal tax liabilities."); *United States v. Harkins*, 355 F. Supp. 2d 1175, 1179 (D. Or. 2004) (granting summary judgment and entering a permanent injunction against the defendant who marketed a corporation sole as "a religious-based entity which purports to offer tax advantages to participants.").

The Court concludes that D'Skell is the alter ego of Mr. Buckardt.  As such, the Government's federal tax liens may attach to Subject Properties held in title by D'Skell, and the Government is entitled to foreclose its liens on the Subject Properties.

## V.   CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Government's motion for summary judgment and finds the following:

(1) Elmer Buckardt owes the Government federal income tax for the tax years 2002-2005, 2007-2008, and 2010-2011; civil penalties under 26 U.S.C. § 6702 for tax years 2000-2002 and 2006-2008; and civil penalties under 26 U.S.C. § 6673 for tax year 2008, in the amount of $739,798.79 as of January 24, 2020, less any subsequent payment or credits, plus interest and other statutory additions, as provided by law;

(2) The Government has valid federal tax liens against all of Elmer and Karen Buckardt's property and rights to property, including the Subject Properties

ORDER – 14

located at 5933 5933 284th Street NW, Stanwood, WA 98292-6425 and 6005 284th Street NW, Stanwood, WA 98292-6426;

(3) Elmer Buckardt and Karen Buckardt are the true owners of Subject Properties because the D'Skell Agape Society is their alter ego.

(4) The Government may foreclose its liens upon the Subject Properties; and

(5) The Government is entitled to its costs and such other relief as is just and proper.

(6) As noted in Footnote 1, although not raised in the motion for summary judgment, Snohomish County is effectively dismissed as a party. If the Government disagrees with this, they should file a motion within 10 days of the date of this order.

IT IS SO ORDERED.

DATED this 18th day of September, 2020.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 15